IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBAX CORPORATION d/b/a          §
TEXAS WATERWORKS,                §
                                 §
                Plaintiff,       §
                                 §  Civil Action No. 3:07-CV-1399-D
VS.                              §
                                 §
PROFESSIONAL PARKS, INC.,        §
et al.,                          §
                                 §
                Defendants.      §

MEMORANDUM OPINION
AND ORDER

Plaintiff Robax Corporation d/b/a Texas Waterworks ("Texas Waterworks") moves for partial summary judgment on three of its seven claims——one based on the Texas Construction Trust Fund Act, Tex. Prop. Code Ann. §§ 162.001-162.033 (Vernon 2007) ("Trust Act"), another on common law tort of misrepresentation, and a third for breach of contract——against defendants Professional Parks, Inc. ("Professional"), Havern Davis ("Davis"), and Dow Mullins ("Mullins").[1]  Having determined that Texas Waterworks' summary judgment evidence establishes beyond peradventure only its breach of contract claim against Professional, the court grants the motion in part as to that claim but otherwise denies the motion.

_____

[1]Although framed as a motion for partial summary judgment, Texas Waterworks asks that, if the court grants the motion, the remaining claims be dismissed and a final judgment entered.  P. Mot. 1.  It makes a similar request in its brief.  P. Br. 17.  Because the court is granting Texas Waterworks' motion only as to its breach of contract claim, the court will not dismiss the remaining claims.

The City of Frisco contracted with a general contractor, Lee Lewis Construction, Inc. ("Lewis Construction"), to construct the Frisco Recreation and Aquatics Facility in Frisco, Texas ("the Project").[2]  Lewis Construction then subcontracted with Texas Waterworks ("Lewis Construction Subcontract") for Texas Waterworks to design and build the indoor and outdoor aquatics facilities for the Project.  A principal component of the Lewis Construction Subcontract required Texas Waterworks to provide waterslides for the Project.

Texas Waterworks in turn subcontracted with Professional ("Professional Subcontract") and assigned to Professional the obligation of manufacturing, delivering, and installing the waterslides for the Project.  Before the parties entered into the Professional Subcontract, Professional, through Davis, its President, represented to Texas Waterworks that Professional would obtain key waterslides for the Project from Polin, a Turkish waterslide manufacturer and one of the largest waterslide

---

[2]The court attempts to recount the evidence in a light favorable to Professional as the summary judgment nonmovant and draws all reasonable inferences in its favor. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).  But because Professional has not filed a response brief, it is not entirely clear which of Texas Waterworks' factual assertions Professional contests.  Nevertheless, either through its responsive pleading or through its failure to respond to requests for admissions, Professional has admitted most of the facts that the court relates.

manufacturers in the world.

The Professional Subcontract specified a total contract price of $286,500. Professional was obligated to substantially complete the manufacture and installation of the waterslides within 120 days of signing of the contract and Texas Waterworks' initial down payment (30% of the contract price). Texas Waterworks paid the initial down payment on January 5, 2007, and the contract was fully signed by September 27, 2006. Thus Professional was required to achieve substantial completion by May 5, 2007. Additionally, the Professional Subcontract specified that time was "of the essence." As of August 13, 2007, the date this lawsuit was filed, Professional had not delivered or even manufactured any of the required waterslides. To date, Texas Waterworks has paid Professional $165,950 pursuant to the Professional Subcontract, and all payments were timely.

In the months after the substantial completion deadine, Texas Waterworks wrote several emails and letters to Professional attempting to determine when Professional would deliver the waterslides, but Texas Waterworks was not able to get an answer from Professional. On June 28, 2007 Texas Waterworks sent Professional a notice of default, which complied with the requirements of the Professional Subcontract. On the same day, Texas Waterworks requested in a separate letter that Professional provide financial assurance of its performance under the

Professional Subcontract. Professional has neither provided Texas Waterworks a schedule for delivery of the waterslides for the Project nor has it provided any financial assurances. Texas Waterworks properly terminated the Professional Subcontract based on Professional's default, and in August 2007 Texas Waterworks contracted with another waterslides distributor, Westwind Leisure Group Ltd. ("Westwind"), to provide the waterslides that Texas Waterworks needed to fulfill its obligation under the Lewis Construction Subcontract. The contract price for this new contract with Westwind is $315,000, a significant portion of which Texas Waterworks has already paid.

Texas Waterworks sued Professional, Davis, and Mullins, another officer of Professional, for seven causes of action.[3] Texas Waterworks now moves for summary judgment on three of its seven claims. Professional has not submitted an opposition brief. Much of Texas Waterworks' summary judgment evidence is based on requests for admissions to which Professional has failed to respond.[4] Professional's deemed admissions are competent summary

---

[3]Some of these claims were asserted against Professional, individually, and some included defendants Davis and Mullins.

[4]Texas Waterworks sent Professional its first request for admissions on December 4, 2007. Defendants have yet to respond to these requests. Accordingly, under Fed. R. Civ. P. 36(a)(3), all of the requested admissions in Texas Waterworks' first request for admissions are deemed admitted. Rule 36(a) specifies that any matter admitted is

conclusively established. In form and

judgment evidence. *See In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.").

## II

Because Texas Waterworks bears the burden of proof on the three claims on which it seeks summary judgment, it must establish "'beyond peradventure all of the essential elements of the[se] claim[s].'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Texas Waterworks must demonstrate that there are no genuine and material fact disputes on any of the essential elements

substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible. This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim.

*Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) (internal quotation marks and footnotes omitted) (quoting Rule 36 Advisory Committee's Note, 48 F.R.D. 487, 534 (1970)).

of each claim. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). The court has noted that the "beyond peradventure" standard is "heavy." *See, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.). Although Professional has not responded to Texas Waterworks' motion, the court is not permitted to enter a "default" summary judgment, but the court may accept as true all of Texas Waterworks' undisputed summary judgment evidence. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). Moreover, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

III

The court first addresses Texas Waterworks' Trust Act claim against all three defendants.

A

Under the Trust Act, a trustee of trust funds "is liable for misapplication of trust funds if he intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee

to the beneficiaries of the trust funds." *Holladay v. CW & A, Inc.*, 60 S.W.3d 243, 245-46 (Tex. App. 2001, pet. denied) (citing § 162.031(a)). The Trust Act defines trust funds as "payments . . . made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." § 162.001.

> A party who misapplies these trust funds is subject to civil liability if (1) it breaches the duty imposed by the Texas Construction Fund Act, and (2) the requisite plaintiffs are within the class of people that the act was designed to protect and have asserted the type of injury the act was intended to prohibit.

*Holladay*, 60 S.W.3d at 246 (citing *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 873 (Tex. App. 1995, writ denied)); *see also Kelly v. Gen. Interior Constr., Inc.*, ___ S.W.3d. ___, 2008 WL 2605614, at *3 (Tex. App. July 3, 2008, no pet. h.) (citing *C & G, Inc. v. Jones*, 165 S.W.3d 450, 453 (Tex. App. 2005, pet. denied)).

B

The court first inquires whether Texas Waterworks' summary judgment evidence demonstrates that it is among the class of persons whom the Trust Act is intended to protect.

1

The Trust Act is intended to protect beneficiaries of trust funds. *See Lively*, 904 S.W.2d at 875. The Trust Act defines "beneficiaries of trust funds" as "[a]n artisan, laborer, mechanic,

contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement." § 162.003. "The Legislature enacted section 162 as a special protection for contractors and subcontractors in order to avoid the injustice of owners' and contractors' refusal to pay for work completed." *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 870 (Tex. App. 1995, no writ) (citing *Am. Amicable Life Ins. Co. v. Jay's Air Conditioning & Heating, Inc.*, 535 S.W.2d 23, 26 (Tex. Civ. App. 1976, writ ref'd n.r.e)); *see also In re Waterpoint Int'l*, 330 F.3d 339, 345 (5th Cir. 2003) ("[Section 162] was enacted to serve as a special protection for subcontractors and materialmen in situations where contractors or their assignees refused to pay the subcontractor or materialman for labor and materials. The Code imposes fiduciary responsibilities on contractors to ensure that subcontractors, mechanics and materialmen are paid for work completed." (citation omitted)); *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 428 F.Supp.2d 696, 714-15 (E.D. Tex. 2006). "Chapter 162 was enacted to give protection to materialmen in addition to that provided by the materialman's liens statutes." *C & G, Inc.*, 165 S.W.3d at 454 (citing *McCoy v. Nelson Utils. Servs., Inc.*, 736 S.W.2d 160, 164 (Tex. App. 1987, writ ref'd n.r.e.)).

The money Texas Waterworks paid Professional pursuant to the Professional Subcontract constituted trust funds under the Trust Act. And Professional did not pay to Polin any of the trust funds that Professional received from Texas Waterworks. Professional said that Polin would be manufacturing the waterslides for the Project. Since the time it signed the Professional Subcontract, Professional has not paid any money to Polin. Moreover, because Davis and Mullins both had authority to direct how Professional would make payments, and they jointly made the determination not to pay Polin the trust funds, they, along with Professional, are trustees of the trust funds. *See* § 162.002 ("A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds."); *see also C & G, Inc.*, 165 S.W.3d at 455 ("[T]he key to determining 'control or direction' was whether those who could exercise power did so, i.e., whether they actually diverted trust funds and failed to pay the materialman entitled to the funds.").

Although Texas Waterworks has met many of the elements of a Trust Act claim against defendants, it has not demonstrated that it is among the class of persons whom the Trust Act was intended to protect. The funds Texas Waterworks paid Professional were trust funds, but Texas Waterworks was not a beneficiary of these funds.

If anyone was a beneficiary, it was Polin, or anyone else furnishing material or labor in manufacturing the waterslides that Professional was required to deliver to Texas Waterworks. Texas Waterworks was not required to perform, and in fact did not perform, any services to assist Professional in fabricating the waterslides for the Project. The Trust Act was meant to protect those contractors or subcontractors who have completed labor or have provided materials and who are entitled to payments of trust funds and thus are beneficiaries of these funds. *See Herbert*, 915 S.W.2d at 870; *In re Waterpoint Int'l*, 330 F.3d at 345. Texas Waterworks is not among this class of persons. Texas Waterworks has presented no authority to suggest that non-beneficiaries of misappropriated trust funds can bring a claim under the Trust Act. The court is not aware of any case in which a party in Texas Waterworks' situation—a contractor who has *paid* the trust funds at issue to a downstream subcontractor—has successfully asserted a Trust Act claim against a downstream subcontractor for misappropriation of those funds. Texas Waterworks is complaining of Professional's *non-performance*, not its *non-payment*. Thus Texas Waterworks cannot bring this claim against Professional under the Trust Act.

C

Assuming *arguendo* that Texas Waterworks is among the class of persons whom the Trust Act is intended to protect, the court must

still deny summary judgment because Texas Waterworks' evidence, coupled with the deemed admissions, does not establish as a matter of law that Professional misappropriated the trust funds.

Although Professional has admitted that it represented to Texas Waterworks that it would obtain the key waterslide from Polin, this representation is not in the Professional Subcontract. So far as the court can tell, Polin's name is not even mentioned in the Professional Subcontract. The deemed admissions on which Texas Waterworks relies establish that Professional did not have a written contract or purchase order with Polin concerning the waterslides. Moreover, the affidavit of Robert Baxter ("Baxter"), Texas Waterworks' President, indicates that Polin has yet to do *any* work on the waterslides for the Project. In a July 6, 2007 letter to Lewis Construction, Baxter stated that he was "unable to determine if [Professional] even placed an order for waterslides with Polin . . . [and was] unable to determine if Polin is fabricating any waterslides for [Professional]." P. App. 98-99. Thus there is no evidence, much less proof that establishes the fact beyond peradventure, that Polin has provided or is contractually obligated to provide any labor or materials for the fabrication of the waterslides for the Project. Thus fact issues remain regarding whether Polin is a beneficiary of the trust funds.

A trustee misapplies trust funds when he "directly or indirectly retains, uses, disburses, or otherwise diverts trust

funds without first fully paying all current or past due
obligations incurred by the trustee to the beneficiaries of the
trust funds[.]" § 162.031. The Trust Act defines "current or past
due obligations" as "those obligations incurred or owed by the
trustee for labor or materials furnished in the direct prosecution
of the work under the construction contract prior to the receipt of
the trust funds[.]" § 162.005(2). Texas Waterworks has not
established beyond peradventure that Professional incurred a
financial obligation to Polin for labor or materials that Polin
furnished for the Project. Without such a financial obligation to
Polin or to some other subcontractor, Professional could not have
misappropriated the trust funds, even if Professional never paid
Polin any of the trust funds.

D

Texas Waterworks posits that if it cannot assert a Trust Act
claim against defendants in its own name, it can bring one against
defendants in Polin's stead through the doctrine of equitable
subrogation.

> There are two types of subrogation.
> Contractual (or conventional) subrogation is
> created by an agreement or contract that
> grants the right to pursue reimbursement from
> a third party in exchange for payment of a
> loss, while equitable (or legal) subrogation
> does not depend on contract but arises in
> every instance in which one person, not acting
> voluntarily, has paid a debt for which another
> was primarily liable and which in equity
> should have been paid by the latter.

- 12 -

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007) (citations omitted); *see also C. Green Scaping, L.P. v. Westfield Ins. Co.*, 248 S.W.3d 779, 790 (Tex. App. 2008, no pet.). "[Equitable subrogation] allows a party who pays the debt of another to put on the released creditor's shoes and collect reimbursement." *C. Green Scaping*, 248 S.W.3d at 790. "The purpose of the doctrine is to prevent the unjust enrichment of the debtor who owed the debt that is paid." *Langston v. GMAC Mortgage Corp.*, 183 S.W.3d 479, 481 (Tex. App. 2005, no pet.).

Texas Waterworks' attempt to assert a claim in the shoes of Polin on the basis of equitable subrogation is fraught with problems. First, the summary judgment evidence does not establish beyond peradventure that Polin is a beneficiary of the trust funds held by Professional. As the court notes *supra* at § III(C), Texas Waterworks has not established as a matter of law that Polin has provided, or is contractually obligated to provide, any labor or materials for the fabrication of the waterslides for the Project. Because Texas Waterworks has not demonstrated that Polin is a beneficiary of the trust funds under the Trust Act or that Professional misappropriated the trust funds, fact issues remain concerning whether Polin is entitled to assert a claim against Professional under the Trust Act.

Assuming *arguendo* that Polin was a beneficiary of the trust funds and had a legitimate claim against defendants under the Trust

Act, the doctrine of equitable subrogation would not allow Texas Waterworks to stand in Polin's shoes to assert this claim. For the doctrine to apply in this case, it would be necessary for Texas Waterworks to show that Texas Waterworks has paid a debt to Polin owed by Professional, so that Texas Waterworks could stand in the shoes of Polin as creditor and collect the debt against Professional. Texas Waterworks appears to argue that its payments to Westwind qualify as satisfying a debt payable to Polin. But the court cannot discern how Texas Waterworks' payments to Westwind satisfy a debt that Professional owed to Polin. And even if Texas Waterworks' theory had force, the doctrine of equitable subrogation applies only if the payments satisfying Professional's debt to Polin were made involuntarily. *See First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993); *Mid-Continent Ins. Co.*, 236 S.W.3d at 774. Texas Waterworks has not addressed this requirement. Therefore, Texas Waterworks is not entitled to summary judgment on its Trust Act claim.

IV

Texas Waterworks' claim for misrepresentation and omission has three parts. First, Texas Waterworks points to Professional's representation that it would obtain certain waterslides from Polin. Second, Texas Waterworks contends that Professional made further misrepresentations when it periodically invoiced Texas Waterworks for progress that Professional was supposedly making in producing

the waterslides. Third, Texas Waterworks posits that, while negotiating the Professional Subcontract, Professional concealed material facts related to its ability to perform its contractual obligations.

A

In analyzing Texas Waterworks' misrepresentation claim based on Professional's statement that it would obtain key waterslides from Polin, the court notes initially that Texas Waterworks' complaint and summary judgment motion do not indicate whether this claim is brought under common law fraud or negligent misrepresentation. Either way, Texas Waterworks' claim based on Professional's statement that it would obtain the waterslides for the Project from Polin requires that this representation be false. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

"This Court has also repeatedly recognized that a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." *Formosa Plastics*, 960 S.W.2d at 46. "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Id.* at 48. "Though a party's intent is determined at the time of the representation, this intent may be inferred from

the party's acts after the representation is made." *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 48 (Tex. App. 2006, no pet.).  But "the mere failure to perform a contract is not evidence of fraud." *Formosa Plastics*, 960 S.W.2d at 48.

The summary judgment evidence conclusively establishes that Professional represented to Texas Waterworks that Professional would obtain key waterslides from Polin for the Project.  This was a promise of future performance.  This promise could have been false, therefore, only if Professional had no intention of performing it.  Request No. 5 in Texas Waterworks' first requests for admissions seems to establish such an intent.  Professional admitted by default that, "[a]t the time that [Professional] signed the [Professional] Subcontract, [Professional] did not intend to obtain some waterslides from Polin for the Project."  P. App. 33.  Request No. 5, however, directly contradicts the admission in response to Request No. 4: "At the time that [Professional] signed the [Professional] Subcontract, [Professional] intended to obtain some waterslides from Polin for the project."  P.  App. 33.[5]

In *In re Corland Corp.*, 967 F.2d 1069 (5th Cir. 1992), the Fifth Circuit addressed the effect of seemingly contradictory Rule 36 admissions.  In that case, a central issue was whether certain payments were made pursuant to a Corland promissory note or a

_____

[5]The only difference between the two requests for admissions is the "not" contained in Request No. 5.

Stephenson promissory note. *Id.* at 1074  The defendants admitted a request for admission that the payments were made under the Stephenson note, but then later denied essentially the same statement in another request for an admission. *Id.* Contrary to the former admission, the bankruptcy court found, based on other evidence, that the payments were made pursuant to the Corland note. *Id.* The Fifth Circuit rejected the trustee's argument that the defendants were bound by their admission that the payments were made pursuant to the Stephenson note, and that the bankruptcy court did not err in relying on evidence contradicting this particular admission. *Id.* The circuit court also held that the defendants' admission that the payments were made under the Stephenson note "does *not* constitute a judicial admission." *Id.*

The court reads *In re Corland* as standing for the proposition that when a party provides contradictory answers to requests for admissions, the responses do not have the effect of Rule 36 admissions, i.e., they are not binding, and contrary evidence can be offered and admitted. Another district court has similarly read *In re Corland.* *See James v. Harris County*, 2006 WL 2827050, at *9 (S.D. Tex. Sept. 28, 2006) ("Moreover, the Fifth Circuit teaches that where an answering party's responses to two different requests for admissions are contradictory, the admission relied on by the requesting party will not bind the answering party." (citing *In re*

*Corland*, 967 F.2d at 1074)).[6]   Thus following *In re Corland*, neither Request No. 4 nor Request No. 5 binds defendants.

The only other evidence establishing that Professional did not intend to perform its promise of future performance is Professional's admissions that, at the time it signed the Professional Subcontract, Professional owed Polin money from unrelated purchases, and Polin had told Professional that Polin would not ship any waterslides to Professional until Professional had paid some or all of its overdue accounts payable.   Taken together, however, these admissions do not establish beyond peradventure that Professional lacked the intent to perform its promise of obtaining key waterslides from Polin for the Project. Professional was behind on payments to Polin for unrelated matters and had to resolve some of this indebtedness before obtaining waterslides for the Project.   But these facts are consistent with Professional's intent to perform its promise of future performance. So far as the summary judgment record shows, Professional could have reasonably thought that it could resolve the arrearage to Polin in time to fulfill its promise to Texas Waterworks. Moreover, Professional's admissions that it was indebted to Polin on other deals does not establish the amount of this indebtedness

---

[6]Another Texas district court has held that when "two admissions are contradictory, then logically either may be used against the person answering the admission." *Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 578 n.5 (E.D. Tex. 1993).   But the *Swallow Turn Music* court did not even mention *In re Corland*.

or the amount of the debt that Professional was obligated to pay before Polin would ship waterslides. Texas Waterworks is not entitled to summary judgment on its fraud or negligent misrepresentation claim based on Professional's statement that it would obtain key waterslides for the Project from Polin.

B

Although Texas Waterworks' complaint alleges that Professional misrepresented the progress of its obligations under the Professional Subcontract by periodically sending Texas Waterworks invoices, Texas Waterworks' summary judgment brief dealing with its claim for misrepresentation does not reference the sending of invoices as a basis for recovery. The court thus declines to grant summary judgment on this theory.

C

Texas Waterworks also asserts a claim for fraudulent concealment, contending that, during the negotiations of the Professional Subcontract, Professional deliberately concealed material facts from Texas Waterworks concerning Professional's ability to perform under the Professional Subcontract.

Professional's deemed admissions conclusively establish the following facts: (1) at the time Professional signed the Professional Subcontract, Professional had outstanding accounts payable with Polin, and Polin had told Professional that it would not ship any waterslides to Professional until Professional paid

some of the outstanding debt; (2) at the time Professional signed the Professional Subcontract, Professional was in default on other agreements to provide waterslides, and Professional was involved in litigation and arbitration related to the defaults on these other agreements; and (3) before signing the Professional Subcontract, Professional did not disclose to Texas Waterworks that Professional was in default on other agreements to provide waterslides and did not disclose to Texas Waterworks the litigation and arbitration related to these defaults. Moreover, in his affidavit, Baxter avers that, before entering into the Professional Subcontract, Professional never disclosed to Texas Waterworks that it had outstanding accounts payable with Polin or that there were disputes between Professional and Polin that might prevent Professional from obtaining waterslides for the Project.

"[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001); *see*, *e.g.*, *Four Bros. Boat Works, Inc. v. Tesoro Petrolium Cos.*, 217 S.W.3d 653, 670 (Tex. App. 2007, pet. denied). "Whether such a duty exists is a question of law." *Bradford*, 48 S.W.3d at 755. "Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

> In addition to situations where there is a
> fiduciary or confidential relationship, . . .
> a duty to speak may arise in an arms-length
> transaction in at least three other
> situations: (1) when one voluntarily discloses
> information, he has a duty to disclose the
> whole truth: (2) when one makes a
> representation, he has a duty to disclose new
> information when the new information makes the
> earlier representation misleading or untrue;
> and (3) when one makes a partial disclosure
> and coveys a false impression, he has the duty
> to speak.

*Playboy Enters., Inc. v. Editorial Caballero*, 202 S.W.3d 250, 260
(Tex. App. 2006, pet. denied); *see, e.g., Solutioneers Consulting,
Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex.
App. 2007, no pet.); *Four Bros. Boat Works*, 217 S.W.3d at 670-71;
*Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 477
(Tex. App. 2004, no pet.).

Texas Waterworks has not demonstrated that Professional had a
duty to speak about the facts related to Professional's financial
disputes with Polin and other customers. There is no evidence
suggesting that Texas Waterworks and Professional had a
confidential or fiduciary relationship. There is no proof that
Professional revealed information about its financial standing with
Polin and other customers that would require it to reveal the whole
truth. There is no evidence that Professional made any
representation about its relations with Polin or other customers
that required Professional to supplement relevant information. And
there is no proof that Professional made a partial disclosure

related to its relationship with Polin or its other customers that would give a false impression about Professional's standing with these individuals. Based on the summary judgment evidence, the court concludes that Texas Waterworks has failed to establish that Professional had a duty to disclose the information related to its financial disputes with Polin and other customers.

Therefore, Texas Waterworks is not entitled to summary judgment based on fraud or negligent misrepresentation.

V

The court next considers Texas Waterworks' claim that Professional breached the Professional Subcontract.

A

The court must first determine which state's law applies to this breach of contract claim, because the Professional Subcontract does not contain a choice-of-law provision. Absent the existence of a choice-of-law provision, Texas courts "consider the facts of the case under the 'most significant relationship' test set forth in section 188 of the *Restatement (Second) of Conflicts of Laws.*" *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735-36 (Tex. 1997).

> In the absence of an effective choice of law
> by the parties . . ., the contacts to be taken
> into account in applying § 6 to determine the
> law applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the

contract, and

    (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188(2) (1971). "We must also evaluate these contacts in the context of certain policy factors listed in section 6 of the *Restatement*." *Minn. Mining & Mfg.*, 953 S.W.2d at 736. These principles include:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

*Id.* (quoting Restatement (Second) of Conflicts of Laws § 6(2) (1971)). "[P]olicy analysis is difficult in this case because few of these [§ 6] factors guide us in a discernable way." *Id.* But the last § 6 factor, the ease in determining and applying the law, weighs in favor of applying the law of Texas. *Small v. Small*, 216 S.W.3d 872, 880 (Tex. App. 2007, pet. denied) ("Although the burden of a court in applying another state's law might be slight, it is more burdensome to apply foreign law than the law of the forum.").

    Many of the § 188 factors are a wash. Texas Waterworks is a

Texas corporation with its principal place of business in Texas. Professional is a Tennessee corporation with its principal place of business in Tennessee. The parties signed the contract in their respective states. The summary judgment evidence does not reveal where the Professional Subcontract was negotiated. The place of performance and the subject matter of the contract, however, counsel in favor of applying Texas law. The Professional Subcontract required Professional to manufacture certain waterslides, deliver them to Frisco, Texas, and then to install them there. The Professional Subcontract does not indicate where the manufacturing would take place or even who would manufacture the waterslides, since Professional was planning on assigning the task of manufacturing the waterslides to Polin. But Professional's delivery and installation obligations required performance in Texas. Because the place of manufacturing the waterslides is unclear, the court determines that the place of performance for the Professional Subcontract is Texas. And "[t]he most important of these [§ 188] contacts is the place of performance." *Cudd Pressure Control v. Sonat Exploration Co.*, 202 S.W.3d 901, 906 (Tex. App. 2006, pet. denied). Moreover, the location of the subject matter of the contract——The Frisco Recreation and Aquatics Facility——is in Texas. The Professional Subcontract conspicuously indicates that the purpose of the contract is to assist in the construction of the Frisco Recreation and Aquatics Facility. Considering the relevant

Restatement factors, the court concludes that Texas law applies to Texas Waterworks' breach of contract claim.

B

The court must next determine whether the Texas version of Article 2 of the Uniform Commercial Code ("UCC") applies to the Professional Subcontract. Article 2 of the UCC governs contracts for the sale of goods. *See* Tex. Bus. & Com. Code Ann. § 2.102 (Vernon 1994). The Texas Business and Commerce Code defines "goods" as "all things *(including specially manufactured goods)* which are movable at the time of identification to the contract for sale[.]" *Id.* § 2.105(a) (emphasis added). "In the absence of explicit agreement identification occurs (1) when the contract is made if it is for the sale of goods already existing and identified; [or] (2) if the contract is for the sale of future goods . . . , when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers[.]" *Id.* § 2.501(a). When the waterslides described in the Professional Subcontract were to be delivered to Frisco, Texas for installation—the time of identification to the contract for the sale of future goods—they would have been movable. Despite the fact that the waterslides were to be custom made for a particular project, they constitute goods under the Texas UCC. *See Custom Controls Co. v. Ranger Ins.*, 652 S.W.2d 449, 451-52 (Tex. App. 1983, no writ) (holding that purchase of 12 wellhead control panels

"that were to be specifically designed for and constructed to meet the particular needs of [the buyer]," and that were not readily marketable to anyone other than the buyer, were Article 2 goods). Thus the Professional Subcontract provides for the sale of goods.

But it also contains a service component, because Professional was required to install the waterslides after delivering them to Frisco, Texas. "When a contract contains a mix of sales and services, the U.C.C. applies if the sale of goods is the 'dominant factor' or 'essence' of the transaction." *Tarrant County Hosp. Dist. v. GE Automation Servs., Inc.*, 156 S.W.3d 885, 893 (Tex. App. 2005, no pet.). In *Tarrant County Hospital District* the court held that the dominant factor of a contract requiring the seller "to design, supply, and install a power supply system" was the sale of goods. *Id.* at 887, 893; *see also PPG Indus., Inc. v. JMB/Houston Ctrs. Partners L.P.*, 146 S.W.3d 79, 83 (Tex. 2004) (holding that UCC Article 2 applied to contract that required seller to manufacture, deliver, and install 12,000 commercial windows for sky-scraper). The court concludes that the essence of the Professional Subcontract is for the sale of goods, despite the fact that it contains an installation service component.

C

As the court recounted *supra* at § I, the summary judgment evidence conclusively establishes the following facts: the Professional Subcontract required Professional to achieve

substantial completion of manufacturing and installing the waterslides for the Project by May 5, 2007; as of August 13, 2007, Professional had not delivered or manufactured *any* of the waterslides for the Project; the Professional Subcontract made time of the essence; Professional properly terminated the Professional Subcontract based on Professional's default; and Texas Waterworks has paid Professional $165,950 of the $286,500 contract price. This evidence establishes beyond peradventure that Professional breached the Professional Subcontract, and that this was a breach of the whole contract. *See* Tex. Bus. & Com. Code Ann. § 2.612(c) (Vernon 1994) ("Whenever non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole.").

1

> Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2.612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid (1) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract[.]

*Id.* § 2.711. The next section provides:

> After a breach within the preceding section the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

> (b) The buyer may recover from the seller as
> damages the difference between the cost of
> cover and the contract price together with any
> incidental or consequential damages as
> hereinafter defined (Section 2.715), but less
> expenses saved in consequence of the seller's
> breach.

*Id.* § 2.712. "[T]he goods purchased as 'cover' need not be identical to those provided in the contract, but must be commercially usable as reasonable substitutes." *Mueller v. McGill*, 870 S.W.2d 673, 676 (Tex. App. 1994, writ denied). "It is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective." *Toshiba Mach. Co. v. SPM Flow Control*, 180 S.W.3d 761, 781 (Tex. App. 2005, pet. granted, judgm't vacated w.r.m.) (internal quotation marks and brackets omitted).

2

In August 2007 Texas Waterworks attempted to cover by contracting with Westwind to provide the waterslides for the Project for $315,000. Texas Waterworks may obtain damages under § 2.712(b) if Texas Waterworks' cover with Westwind was reasonable, made in good faith, and without unreasonable delay. *See* § 2.712(a). In the months after Professional was supposed to have achieved substantial completion, Texas Waterworks wrote several emails and letters to Professional attempting to determine when it would deliver the waterslides, but Texas Waterworks was not able to get an answer from Professional. On June 28, 2007, almost two

months after Professional was supposed to have achieved substantial completion, Texas Waterworks requested that Professional provide a schedule of delivery for the waterslides, as well as financial assurance of its performance under the Professional Subcontract. Professional did not provide Texas Waterworks with a schedule for delivery of the waterslides for the Project, and it did not provide Texas Waterworks any financial assurance. As of August 2007 Professional had not delivered or manufactured any of the waterslides for the Project. That month, Texas Waterworks contracted with Westwind to provide the waterslides for the Project. Professional has also admitted that, under these circumstances, Texas Waterworks acted reasonably in mitigating its damages resulting from Professional's default and had no choice but to seek another distributor for the waterslides; that Professional expected that it would cost more money for Texas Waterworks to secure from another vendor the same waterslides; and that Westwind is a reputable distributor of waterslides. Texas Waterworks has established beyond peradventure that its cover with Westwind was reasonable, made in good faith, and without unreasonable delay. Thus Texas Waterworks is entitled to recovery of damages under § 2.712(b).

Texas Waterworks' damages for covering with Westwind under § 2.712(b) are $28,500 (the difference between the price of Texas Waterworks' contract with Westwind ($315,000) and the Professional

Subcontract price ($286,500)).  Under § 2.711(a), Texas Waterworks

is entitled to recover the payments it has already made to

Professional: $165,950.  Section 2.712(b) provides that Texas

Waterworks can also obtain "incidental or consequential damages."

§ 2.712(b).  But Texas Waterworks waived its claim for

consequential damages in the Professional Subcontract.  Thus Texas

Waterworks is entitled to recover $194,450 from Professional on its

breach of contract claim.

VI

Texas Waterworks also seeks $28,910.50[7] in attorney's fees.

A party who prevails on a breach of contract claim and

---

[7]In the affidavit of plaintiff's counsel, Brian W. Erikson,
Esquire ("Erikson"), he refers to various litigation expenses
associated with prosecuting this case, and records these expenses
in his billing records.  Because plaintiff's summary judgment
motion does not specifically request recovery of these litigation
expenses or costs, the court will not address whether these
expenses are recoverable.  Similarly, the court will not address
Erikson's anticipated attorney's fees if the court's judgment is
appealed, because plaintiff's summary judgment motion does not
request recovery of these conditional attorney's fees, and the
court does not award them in any event.

> State courts make such awards because state
> trial courts are tribunals that make factual
> findings and they must award appellate fees
> before they lose their jurisdiction to do so.
> Federal district courts do not operate under
> similar jurisdictional restraints.  Therefore,
> this court uniformly denies appellate fee
> requests, without prejudice to awarding them
> on a subsequent application that is based on
> actual fees incurred.

*Corman v. Lifecare Acquisitions Corp.*, 1998 WL 185517, at *2 (N.D.
Tex. Apr. 10, 1998) (Fitzwater, J.).

recovers damages on that claim may recover its reasonable attorney's fees under Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008). *See*, *e.g.*, *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). The factors that bear on the reasonableness of attorney's fees are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Tex. Disciplinary R. of Prof. Conduct 1.04, *reprinted in* Tex. Gov't Code, tit. 2, Subtit. G, App. A (Vernon 2005) (Tex. State Bar R. Art. X, § 9); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (adopting Rule 1.04 factors as guidance in determining reasonableness of attorney's fees award).

Texas Waterworks' $28,910.50 fee request is based on 107 hours of work by Brian W. Erikson, Esquire ("Erikson"), and 6.5 hours of work by his paralegal, Cheryl Moseley ("Moseley"). Erikson billed

his legal services at rates between $240 and $275 per hour, and Moseley's work was billed at $105 per hour. Erikson affirmed that he regularly bills Texas Waterworks between $240 and $275 per hour for his work. Erikson has been practicing law since 1983. Moseley has been a certified paralegal since 2003 and has received other related professional certificates. Erikson avers that he is familiar with the types of rates and services customarily required for cases like this one, and that, based on his knowledge of the prevailing practices in the Dallas legal market and his regular billing practices, $28,910.50 in attorney's fees is reasonably necessary for the work that he and Moseley performed.

"It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." Tex. Civ. Prac. & Rem. Code Ann. § 38.003 (Vernon 2008). "What constitutes reasonable attorney's fees is a question of fact, but clear, direct, uncontroverted evidence of attorney's fees is taken as true as a matter of law[.]" *Collins v. Guinn*, 102 S.W.3d 825, 836 (Tex. App. 2003, pet. denied) (internal quotation marks omitted) (holding that attorney's uncontroverted affidavit supporting attorney's fees request established the amount of attorney's fees as a matter of law).

After reviewing Erikson's uncontroverted affidavit and his billing records, and after considering them in light of the Rule 1.04 factors, the court finds and concludes that Texas Waterworks'

summary judgment evidence in support of its fee request is free of circumstances tending to raise suspicion on the fee request, and that it establishes the reasonableness of the fee request as a matter of law. Therefore, Texas Waterworks is entitled to recover attorney's fees in the sum of $28,910.50.

*     *     *

Accordingly, the court grants in part and denies in part Texas Waterworks' May 21, 2008 motion for partial summary judgment.

**SO ORDERED.**

August 8, 2008.

                _____
                SIDNEY A. FITZWATER
                CHIEF JUDGE